**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | **CRIMINAL NO. 16-0009 (TSC)** |
| **v.** | **:** | |
| | **:** | |
| **JOSPEH RICKY PARK,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

_____

**MOTION TO DISMISS THE INDICTMENT**

Mr. Park is charged with a single count of engaging in illicit sexual conduct in foreign places in violation of 18 U.S.C. §§ 2423(c) and (e).  The indictment alleges that "[b]etween on or about January 1, 2015 and on or about December 1, 2015 . . . [he], a citizen of the United States with no last known residence in the United States, did reside temporarily and permanently in Vietnam, a foreign country, and engage and attempt to engage in illicit sexual conduct."  Mr. Park, through counsel, hereby moves to dismiss the indictment in this case on the grounds that the statute under which he is charged is facially unconstitutional and is also unconstitutional as applied to Mr. Park.   Additionally, Mr. Park moves to dismiss the indictment as a violation of the *Ex Post Facto* Clause of the constitution.

**Factual Background**

Mr. Park is a United States citizen who, prior to his forcible return to the United States by the government in 2016, had not traveled to or from the United States, nor resided within the United States since at least 2003.  He resided in Vietnam from at least 2012 until his arrest in this case.  While residing in Vietnam, he traveled to Thailand on October 22, 2015, to attend to immigration issues that had arisen in Vietnam because of actions taken, unbeknownst to him at the time, by the United States government.  However, even when he traveled to Thailand from

Vietnam, he continued to be domiciled in Vietnam.  He was employed in Vietnam and fully

intended to return to his residence in Vietnam where his personal belongings remained.  At no

time did Mr. Park exhibit any intention to return to the United States.

The government claims to have received an anonymous report in February 2015 that Mr.

Park engaged in illicit sexual conduct with a Vietnamese juvenile in Hanoi, Vietnam in January,

2015.  According to the discovery provided, the juvenile accused Mr. Park of stroking his

genitals through his clothing (not a violation of 2423(c)), and said that Mr. Park attempted to

place his hand inside the victim's pants, (at best, an attempt to violate 2423(c)).   While the

indictment is conclusory and contains no factual allegations,[1] this is the only physical conduct

alleged in the discovery provided.  The government has also indicated there may be one

photograph that it alleges Mr. Park produced of an unknown victim of unknown age, the

production of which falls within the definition of illicit sexual conduct.

## LEGAL BACKGROUND

### A.  The History of the PROTECT Act

The Prosecuting Remedies and Tools Against the Exploitation of Children Today Act of

2003 ("PROTECT Act"), as codified at 18 U.S.C. § 2423, prohibits any American citizen or

permanent resident from "travel[ing] in foreign commerce, and engag[ing] in any illicit sexual

conduct." 18 U.S.C. 2423(c).  The statute also prohibits "travel[ing] in foreign commerce, for the

purpose of engaging in any illicit sexual conduct." 18 U.S.C. 2423(b).  Jurisdiction for both of

these provisions necessarily relies upon the foreign commerce clause, which allows the Congress

to regulate commerce between the United States and foreign countries just as it does commerce

---

[1] See Motion for Bill of Particulars filed this same date.

between the states.  U.S.  Const. art. 1 § 8, cl. 1, 3 ("Congress shall have Power . . . to regulate

Commerce with foreign Nations . . .").  However, the Protect Act was amended in 2013,

purportedly in an effort to reduce what was termed "sex tourism."  The amendment was added

"to make it a crime for a U.S. citizen to travel to another country and engage in illicit sexual

conduct with minors." H.R. Rep. No. 107-525 at 5 (2002).   However, the statute went much

further.  It exerted jurisdiction over an individual who either "travels in foreign commerce or

resides . . . in a foreign country." Publ. L 113-4 (enacted Mar. 7, 2013).  The 2013 amendment

was specifically worded to reach the conduct of expatriates who settled in a foreign country by

removing the requirement that foreign travel precede the sexual conduct.  The summary to H.R.

898 – 113th Congress (2013-2014), which amended the statute, describes the purpose of the

amendment "to expand the prohibition against foreign commerce even if an individual is residing

temporarily or permanently in a foreign jurisdiction." Through this expansion, the statute

punishes individuals who have not engaged in foreign commerce.

While Mr. Park is not and could not be charged under the original statute, it is instructive

to look at cases brought under the earlier version of the statute challenging the constitutionality

of prosecutions of U.S. citizens arrested abroad.  The Ninth Circuit was the first appellate court

to address such a challenge.  In *United States v. Clark*, 435 F.3d 1100 (9th Cir. 2006), *cert.

denied*, 549 U.S. 1343 (2007), the Ninth Circuit held that the framework of the Interstate

Commerce Clause cases delineated in *United States v. Lopez*, 514 U.S. 549 (1995) [2] did not

apply in the context of foreign commerce.  The Ninth Circuit adopted what it termed a "global

commonsense approach" that focused on "whether [a] statute bears a rational relationship to

---

[2] As discussed below *Lopez* held that in the context of domestic interstate commerce, Congress
could regulate three broad categories of activity: "the use of the channels of interstate
commerce," "the instrumentalities of interstate commerce," and "those activities that
substantially affect interstate commerce."  *Id.* at 558-59.

Congress's authority under the Foreign Commerce Clause" and found the old version of §

2423(c) passed constitutional muster.  *Clark* is distinguishable because 1) it was under the old

version of the statute; and 2) in *Clark*, the defendant paid for sex on foreign soil shortly after

traveling there in foreign commerce.  The Court explicitly noted the commercial nature of the

action:  "the combination of Clark's travel in foreign commerce and his conduct of an illicit

commercial sex act in Cambodia shortly thereafter puts the statute squarely within Congress's

Foreign Commerce Clause authority."  *Id*. at 1116.  Importantly, the Ninth Circuit did not hold

that Clark's travel in foreign commerce alone was sufficient to establish jurisdiction.

In 2011, the Third Circuit reached the same conclusion -- that the old version of 2423(c)

was constitutional -- but did so using the traditional *Lopez* framework.  *United States v.*

*Pendleton*, 658 F.3d 299 (3rd Cir. 2011).  In *Pendleton*, the court found that the illicit conduct

could be prosecuted under Congress's authority to regulate the channels of interstate commerce.

*Id*. at 308.  The Third Circuit upheld Pendleton's conviction on the theory that Congress has

broad authority to regulate the channels of commerce to "keep the channels of interstate

commerce free from immoral and injurious uses." *Id*.  The Court did so while citing cases in

which the defendants used channels of commerce to transport a person illegally.[3]  Critics have

argued that *Pendleton* and *Clark* were incorrectly decided because "deferential interpretations of

statutes like § 2423(c) not only encroach upon the sovereignty of foreign nations but also

effectively transform the U.S. Government into INTERPOL by recognizing in Congress a

'plenary [global] police power' that is inconsistent with the limitations of the Constitution."

---

[3] The Third Circuit cited *Caminetti v. United States*, 242 U.S. 470 (1917), *Perez v. United States*, 402 U.S. 146 (1971), and *United States v. Cummings*, 281 F.3d 1046 (9th Cir. 2002), to support its holding in *Pendleton*.  Setting aside whether these cases support the holding in *Pendleton*, none of these cases support the conclusion that the amended statute as applied to Mr. Park is constitutional.

Carmelo Tringali, *U.S. INTERPOL:  The Far-Reaching Consequences of United States v. Pendleton*, 46 Loy. L.A. L. Rev. 391 (Fall 2012); *see also* Anthony Colangelo, *The Foreign Commerce Clause*, 96 Va. L. Rev. 949 (2010).  What is clear is that the Foreign Commerce Clause does not confer on Congress an absolute power to police United States citizens and legal residents with respect their alleged criminal acts outside of the United States.  While the *Pendleton* and *Clark* cases recognized the constitutionality of congressional exercises of power over foreign commerce, § 2423(c) fails even under these holdings because the amended statute does not require a nexus with foreign commerce.  *See United States v. Al-Maliki*, 787 F.3d 784, 791-92 (6th Cir. 2015) (addressing § 2423(c) and (f)(1)'s constitutionality for the first time on appeal under plain-error review and concluding "Does [the Foreign Commerce Clause power] include the power to punish a citizen's noncommercial conduct while the citizen resides in a foreign nation?  We doubt it, but because of plain-error review, we need not finally decide today.  Any error was not plain . . .").

It is likewise useful to compare § 2423(b), which is a constitutional exercise of the foreign commerce clause if the government can prove that the defendant traveled for the specific purpose of engaging in illicit sexual conduct.  Section 2423(b) makes it a crime to "travel in foreign commerce for the purpose of engaging in . . . illicit sexual conduct."  In § 2423(b), the first element -- the intent element -- occurs while in the United States, and the second element – the illicit sexual conduct element -- requires the actual use of the channels of foreign commerce to facilitate the crime, i.e., boarding a vessel.  Unlike § 2423(b), § 2423(c) does not require any intent linking the criminal behavior to the channels of foreign commerce, thus distinguishing all cases prosecuted under § 2423(b).  As discussed below, unlike both § 2423(b) and § 2423(c) as originally enacted, § 2423(c) *as amended* applies to individuals who employ the channels of

foreign commerce for legal purposes and later commit the prohibited conduct without using

channels of foreign commerce.  In fact, the amended version of § 2423(c) applies even when no

channel of foreign commerce is used.  For example, 2423(c) could reach the conduct of a United

States citizen who was born abroad and never traveled outside of the country where he was

born.[4]  It is thus overbroad.

## ARGUMENT

Mr. Park moves to dismiss the indictment because Congress acted beyond the

enumerated powers given it under the Constitution when it enacted the PROTECT Act

amendments in 2013. "The powers of the [federal] legislature are defined and limited."  *Marbury*

*v. Madison*, 5 U.S. (1 Cranch) 137, 176 (1803). "When Congress lacks constitutional authority to

pass a law, it acts *ultra vires*.  And when litigants properly challenge laws passed beyond

Congress's power, courts have a duty to void those laws as repugnant with the People's Law:

The Constitution."  *Id*. at 176.  Article 1 of the Constitution specifically identifies those powers,

*see* U.S. Const. art. 1, and thus "[e]very law enacted by Congress must be based on one or more

of its powers enumerated in the Constitution."  *United States v. Morrison*, 520 U.S. 598, 607

(2000).  Because no constitutional grant of authority empowers Congress to reach the conduct at

issue in this case, the indictment must be dismissed.

### I.     The Foreign Commerce Clause cannot reach non-commercial sexual conduct occurring wholly outside of the United States and involving no channels or instrumentalities of commerce.

Congress exceeded its authority under the Foreign Commerce Clause (Art. I, Sec. 8 of the

United States Constitution) in criminalizing non-commercial illicit sexual conduct.  Additionally,

---

[4] A person born to married U.S. citizens while they are residing outside the United States is a citizen of the United States even if that person never resides in the United States.  *See* https://www.uscis.gov/us-citizenship/citizenship-through-parents.

the extraterritorial application of 18 U.S.C. § 2423(c) violates the Due Process Clause of the Fifth Amendment because there is an insufficient nexus between Mr. Park's alleged conduct and the United States.  Mr. Park left the United States in 2003, never travelled back to the United States, and maintained virtually no contact with the United States.  He did not engage in foreign travel between the United States and Vietnam, where he resided.  Mr. Park challenges the statute both as facially unconstitutional and as applied in the particular circumstances of this case.

Congressional authority to criminalize conduct is not limitless and must derive from the Constitution.  "Congress and the President, like the courts, possess no power not derived from the Constitution." *Ex parte Quirin,* 317 U.S. 1, 25 (1942).  In the context of 18 U.S.C. § 2423(c), that power purports to come from the Commerce Clause, which gives Congress the power "to regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."  This power, however, has long been recognized as limited to regulating "commercial intercourse between the United States and foreign nations."  *Gibbons v. Ogden*, 22 U.S. 1, 193 (1824).  "The restrictions confining Congress in the exercise of any of the powers expressly delegated to it in the Constitution apply with equal vigor when that body seeks to regulate our relations with other nations."  *Perez v. Brownell*, 356 U.S. 44, 58 (1958).  Thus, to protect the sovereignty of foreign nations, absent any other grant of authority to criminalize conduct overseas, the Commerce Clause limits federal power to those acts which affect commerce in some way.  "[T]he general . . .  rule is that the character of an act as lawful or unlawful must be determined wholly by the law of the country where the act is done. . . . For another jurisdiction, if it should happen to lay hold of the actor, to treat him according to its own notions rather than those of the place where he did the acts, not only would be unjust, but would be an interference with the authority of another sovereign. . . ."  *American Banana Co. v. United Fruit Co*., 213

U.S. 347, 356 (1909).  While the specific holding in *American Banana* was later overruled in

*Continental Ore Co. v. Union Carbide,* 370 U.S. 690 (1962), it was overruled only because the

activity engaged in (monopolizing the United States domestic market through conspiratorial acts

overseas) plainly affected foreign commerce.  "A conspiracy to monopolize or restrain the

domestic or foreign commerce of the United States is not outside the reach of the Sherman Act

just because part of the conduct complained of occurs in foreign countries." *Id*. at 704.  Thus,

these two cases taken together demonstrate that absent a nexus to commerce, Congress is without

power to make acts on foreign ground illegal.

     In the absence of jurisdictional authority over the place where an act occurs, there are

three broad categories of activity that Congress may regulate under its authority to regulate

commerce.  Congress may regulate the channels of commerce, the instrumentalities of

commerce, or those activities having a substantial relation to commerce.  *See United States v.

Lopez*, 514 U.S. 549, 558-59 (1995).  Without satisfying at least one of these requirements, a

statute fails on its face.  The foreign commerce clause does not confer on Congress a plenary

power to police United States citizens with respect to their alleged criminal acts outside of the

United States.  While the *Lopez* framework was set in the context of interstate commerce rather

than foreign commerce, the Commerce clause does not distinguish between the two.

"[C]ommerce, as the word is used in the constitution, is a unit, every part of which is indicated

by the term . . . . [I]n its application to foreign nations, it must carry the same meaning

throughout the sentence, and remain a unit. . . ." *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1 (1824).

In other words, "commerce" is the same whether analyzed in the interstate or foreign context.

The definition of commerce does not change within the same sentence of the Constitution.

The only difference between interstate and foreign commerce is that the Interstate Commerce Clause grants Congress the authority to regulate commerce "among" the several states, while the Foreign Commerce Clause grants Congress the power to regulate commerce "with" foreign nations, not among them.  "The word 'among' means intermingled with; in other words, a thing which is among others is intermingled with them.  Commerce among the States, cannot stop at the external boundary line of each State, but may be introduced into the interior." *Gibbons v. Ogden*, 22 U.S. (9 Wheat) 1, 194 (1824).  The word "with" is consistent with the parity that must exist between foreign sovereigns, which, "[u]nlike the states . . . have never submitted to the sovereignty of the United States government nor ceded their regulatory power to the United States."  *United States v. Yunis*, 681 F. Supp. 896, 907 n.24 (D.D.C.  1988).  Commerce "with" foreign nations requires the commerce to be between the United States and the foreign nation.  And Congress has less, not more, authority to regulate inside foreign countries than it has among the states.

Mr. Park is being prosecuted under the provision of § 2423(c) which makes it illegal to reside in a foreign country and engage in "illicit sexual conduct."  Illicit sexual conduct is either (1) a sexual act as defined in § 2246 with a minor, or (2) a commercial sex act as defined in § 1591 with a person under 18 years of age.  Though not clear from the indictment, the government appears to be prosecuting Mr. Park under the first provision, the noncommercial prong.  Such a prosecution necessarily criminalizes non-commercial conduct occurring entirely outside the boundaries of the United States, using no channels or instrumentalities of foreign commerce and having no effect on foreign commerce. As a result, § 2423(c) fails on each of the prongs of the *Lopez* test.

## A.  Channels of Foreign Commerce

Similarly, § 2423(c) cannot stand as a regulation of the channels of commerce for the simple reason that it does not regulate any channels of commerce.  It does not regulate the use of roadways, waterways, or airways, but rather attempts to regulate an act on foreign soil.  The act regulated has nothing to do with the channels of foreign commerce except that the channels of foreign commerce could have been used at some point in history to get to the foreign soil where the act allegedly took place.

Congress has the power under this prong of the analysis to regulate in a manner designed to keep the channels of foreign commerce free from immoral or injurious uses.  *Caminetti v. United States*, 242 U.S. 470, 491 (1917).  But this contemplates regulating channels actually used for the injurious purpose.  By its terms, violations of § 2423(c) do not require that the channel of commerce -- overseas travel -- be used for the purpose of committing an illicit act, unlike § 2423(b), which criminalizes travel in foreign commerce with the intent to engage in illicit sexual conduct.

Instead of regulating the channels of commerce themselves, § 2423(c) regulates exactly what the title of the statute says – engaging in illicit sexual conduct in foreign places.  Thus, the prior travel is really just an attempt at a "jurisdictional hook" to ensnare illicit conduct that takes place after the travel.  *See Scarborough v. United States*, 431 U.S. 563, 575 (1977) (describing "the minimal nexus that the firearm has been, at some time, in interstate commerce").  Unlike the firearm which is an economic good that moved in interstate commerce, § 2423(c)'s jurisdictional hook is not based on an item moving in commerce, but is based on a person's movement at some point in history.  The danger is that if a person's movement in commerce is sufficient to bestow congressional regulatory authority over any act committed by that person thereafter, Congress will have arrogated to itself plenary regulatory power over any citizen or resident who has ever

travelled in foreign commerce.  And because channels of foreign commerce run both ways,

Congress could regulate anything a person does after returning from a foreign country.

> [Section] 2423(c) neither punishes the act of traveling in foreign commerce, or the wrongful use of impediment of use of the channels of commerce.  Rather, it punishes future conduct in a foreign country entirely divorced from the act of traveling except for the fact that the travel occurs at some point prior to the regulated conduct ….  On some level, every act by a U.S. citizen abroad takes place subsequent to an international flight or some form of travel [  ] in foreign commerce.  This cannot mean that every act with a bare economic component that occurs downstream from travel is subject to regulation by the United States under its Foreign Commerce power, or the Commerce Clause will have been converted into a general grant of police power."

*Clark*, 435 F.3d at 1119-20 (Ferguson, J., dissenting).

Congress explicitly disconnected the requirement of criminal intent to injure or commit

an immoral act from the use of a channel of commerce.  *See Clark*, 435 F.3d at 1104-05

(discussing the legislative history of the PROTECT Act).  Regulating the channels of foreign

commerce specifically used for a criminal purpose might prove constitutional, but to regulate the

channels on a theory that they could have been used at some point in time – in this case, more

than a decade earlier – is classic overreach.  For example, while 2423(b) can be said to regulate

the channels of commerce, in that it regulates traveling in interstate commerce *for the purpose* of

engaging in illicit sexual conduct, 2423(c) was deliberately designed to eliminate the need to

show the improper purpose of the travel to make it easier to prosecute.  See H. R. Conf. Rep. No.

108-66, at 51 (2003).  Thus, when Congress amended the statute, it eliminated the element that

provided the rationale for the power to regulate.   The reason § 2423(b) and other statutes

regulating the channels of commerce require an improper purpose during the travel is because if

they did not, Congress could regulate "illicit sexual conduct" based solely on the fact that an

individual had at some point in history crossed state lines or national borders.  This justification

would allow Congress to regulate literally everything done by anyone who had ever traveled in interstate commerce.

This same reasoning unavoidably applies to § 2423(c).  By disconnecting the foreign travel from any improper purpose requirement, Congress can claim virtually unlimited power to regulate anything any U.S. citizen or permanent resident has ever done anywhere in the world if that person has ever traveled in foreign commerce.  In fact, § 2423(c) *as amended* applies to individuals who *never* used foreign channels.  As noted above, § 2423(c) could reach the conduct of a United States citizen who was born abroad and never traveled outside of the country he was born in.  This is akin to granting Congress a general police power, a power it does not have.

Further confirming that 2423(c) does not regulate channels of commerce is that there is nothing inherently criminal about simply traveling in channels of commerce.  Once the *mens rea* underlying an improper purpose of traveling is removed, all that is left is the travel.  An improper purpose requirement is needed to sustain a prosecution on a channels rationale.  *See United States v. Patton*, 451 F.3d 615, 621 & n.3 (10th Cir. 2006) (under the Mann Act, "prostitution . . . must be the purpose at the time of transportation; the statute does not criminalize the transportation of persons who happen, after crossing state lines, to become prostitutes").

It is for this reason that, prior to the 2013 amendment, courts routinely examined the length of time after the travel from the United States to a foreign destination that the illicit sexual conduct occurred, and only upheld convictions under § 2423(c) when such conduct occurred shortly after the travel in foreign commerce.  In *United States v. Clark*, for example, the court rejected an argument that the illicit sexual conduct must occur during the foreign travel, and found that a "limited gap" of two months between the date of travel and the date of arrest implied

an improper purpose at the time of the travel and therefore allowed for United States jurisdiction over the conduct.  435 F.3d 1100, 1107 (9th Cir. 2006).  However, travel was never understood to mean permanent relocation abroad as occurred here.

The legislative intent, statutory language and even the title of the statute -- "Engaging in illicit sexual conduct in foreign places" -- establish that the use of a channel of commerce, if it exists at all, is wholly incidental and unrelated to the injurious act the law seeks to punish.  Thus, Section 2423(c) is not a valid exercise of Commerce Clause power under the first prong of the *Lopez* framework.

### B.  Instrumentalities of Foreign Commerce

"Instrumentalities" are the means by which commerce is conducted, for example, aircraft, shipping or electronic communication, none of which are applicable in the context of § 2343(c) which regulates illicit conduct not the mode of travel.  Any notion that § 2423(c) can be saved by the second prong of *Lopez* can be summarily dismissed.  To be constitutional under the Foreign Commerce Clause under the theory of regulating instrumentalities of foreign commerce, the statute would have to be regulating the people, machines and vehicles used to carry out the acts of foreign commerce.  Here, it does not.  Instead, § 2423(c) attempts to regulate an act on foreign soil after any travel has ceased or even with no travel ever having occurred, and having nothing to do with instrumentalities of foreign commerce.

### Substantial Effect on Foreign Commerce

Section 2423(c) also cannot be upheld on the theory that it is regulating an activity that has substantial effects on foreign commerce. The acts Mr. Park is accused of committing are

noncommercial in nature.  They did not affect foreign commerce, either negatively or positively, in any way, let alone substantially.

Importantly, Congress's power to regulate activity that substantially affects commerce "among the several States" cannot extend to the power to regulate commerce "with foreign Nations."  Congress's power to regulate activity that substantially affects interstate commerce derives from its ability to create what the Supreme Court has variously described as "closed regulatory system[s]" or "comprehensive regime[s]" for regulating U.S. national markets. *Gonzales v. Raich*, 545 U.S. 1, 10, 12-13 (2005).  From this primary authority to create comprehensive regulatory regimes "among" the several U.S. states, the Court has found that it may be "necessary and proper" for Congress to reach activity that substantially affects interstate commerce because it threatens to undermine those schemes.  *Id*. at 5.  Even if Congress has no equivalent power to create comprehensive global regulatory schemes among the nations of the world -- which it does not --  it cannot claim derivative power to reach activity that substantially affects foreign commerce – which in any event, illicit sexual conduct in another country does not -- by threatening to undermine those global regulatory schemes.

The distinction between "with" and "among" discussed above is crucial in this regard. "The enumeration" of one thing "presupposes something not enumerated." *Gibbons*, 22 U.S. at 194-95.  Thus, the word "with" presupposes the exclusion of commerce wholly *inside* a foreign nation or commerce *among other* foreign nations.  This difference means at a minimum that whether the action substantially affects foreign commerce is not relevant, and, at any rate, illicit sexual conduct is not commerce.  Congress can create a comprehensive regulatory scheme within the United States because of the "substantially affects" prong of *Lopez* which allows Congress to regulate conduct that substantially affects interstate commerce.  Congress cannot regulate foreign

actions that substantially affect foreign commerce on this same ground because it has no authority to regulate conduct within or among the various nations of the world.

The Supreme Court has repeatedly explained that a key element for regulating through a "substantially affects" rationale is the "economic" nature of the activity sought to be regulated. *See Raich*, 545 U.S. at 24-27; *United States v. Morrison*, 529 U.S. 598, 609-13 (2000).  In *Morrison,* which involved the constitutionality of the Violence Against Women Act ("VAWA"), the Court noted that "in those cases where we have sustained federal regulation of intrastate activity based upon the activity's substantial effects on interstate commerce, the activity in question has been some sort of economic endeavor." 529 U.S. at 611.   As a result, the Court found the VAWA did not qualify under a "substantially affects" rationale because "[g]ender-motivated crimes of violence are not, in any sense of the phrase, economic activity." *Id*. at 613.  Likewise, neither is the noncommercial sexual abuse of a minor prohibited by § 2423(c).

In *Clark*, the Ninth Circuit held that § 2423(c)'s "combination of requiring travel in foreign commerce coupled with engagement in a commercial transaction while abroad implicate foreign commerce to a constitutionally adequate degree." *Clark*, 435 F.3d at 1103.  However, the court explicitly declined to extend its reasoning to the noncommercial prong, *id*. at 1110 n. 16, emphasizing that the "essential economic character of the commercial sex acts regulated by § 2423(c) stands in contrast to the non-economic activities regulated by the statutes at issue in *Lopez* and *Morrison*." *Id* at 1115.  Thus, any reliance on *Clark* to support applying the Commerce Clause analysis to noncommercial activity is misplaced.  *See, e.g., United States v. Bianchi*, 386 F. Appx. 156, 162 (3d Cir. 2010).  The conduct at issue is noncommercial sexual activity with a minor -- conduct that Congress almost certainly could not regulate under the Interstate Commerce Clause.  *See United States v. Morrison*, 529 U.S. 598, 613 (2000).

In short, the "substantially affects" rationale for congressional regulation "among" the states cannot extend to Congress's power to regulate commerce "with" foreign nations.  And even if it did, § 2423(c) still fails because it seeks to regulate a type of activity that the Supreme Court has explicitly and repeatedly stressed does not fall within the scope of Congress's power to regulate commerce.

### C.  Cases outside the *Lopez* Framework

As noted above, in *United States v. Clark*, the Ninth Circuit held that the *Lopez* framework did not apply in the context of foreign commerce.  435 F.3d at 1107.  The Ninth Circuit instead adopted what it termed a "global commonsense approach" that focused on "whether [a] statute bears a rational relationship to Congress's authority under the Foreign Commerce Clause" and found the former version of § 2423(c) passed constitutional muster.  *Id. See also United States v. Bianchi*, 386 F. Appx. 156, 161-62 (3d Cir. 2010).  Given that the *Clark* case did not address the amended language, its analysis provides no framework for deciding the constitutionality of the statute with which Mr. Park is charged.

In *United States v. Bollinger*, 798 F.3d 201, 215-16 (4th Cir. 2015), *cert denied*, 136 S. Ct. 2448 (2016), the Fourth Circuit stated, "[w]e continue to believe, however, that the third *Lopez* category—permitting the regulation of 'activities that substantially affect interstate commerce'— is unduly demanding in the foreign context."  This approach is not entirely in line with *Lopez*. While it relies upon language used in the interstate context, it substitutes for the interstate category "activities that substantially affect" commerce with the new formulation that Congress may regulate activities that "demonstrably affect" commerce.  However, the Fourth Circuit provides no intimation as to what "demonstrably affect" commerce means, apart from the

(analytically circular) fact that petitioner's conduct in the case before it evidently "demonstrably affect[ed]" foreign commerce. *Id.* at 216. This reasoning should be rejected. Otherwise once someone travels outside of this country, everything that person does thereafter falls within Congress's regulatory authority, thereby both undermining the axiom of a government of limited and enumerated powers and effectively rendering superfluous the other Article I powers that authorize Congress to enact laws with extraterritorial effect.

### E.    Summary

Mr. Park is being prosecuted under the non-commercial prong of 2423(c), raising the question of whether Congress can proscribe illicit but non-commercial sexual conduct in a foreign place when there has been no temporal travel in foreign commerce. Cases analyzing Section 2423(b) or even the clause of 2423(c) that requires the sexual conduct to have occurred after traveling in foreign commerce are not relevant to this inquiry. In cases when a defendant has recently traveled in foreign commerce prior to engaging in the illicit conduct there is arguably a nexus to channels of commerce. Here, however, when Mr. Park had not traveled between the United States and any foreign nation since at least 2003, more than a decade before any charged illicit conduct, and the only action is noncommercial in nature, Congress has no authority to regulate the conduct. When Congress passes a statute that regulates conduct outside the scope of its Article 1 authority, the government may not prosecute for violations of that statute. *See Lopez*, 514 U.S. at 561 (conviction reversed when Congress exceeded its authority by banning the possession of handguns near schools because handgun possession had no substantial effect on interstate commerce and the ban "contain[ed] no jurisdictional element which would ensure, through case-by-case inquiry, that [handgun possession affects interstate commerce."); *Morrison*, 529 U.S. at 613-14 (provision prohibiting crimes of violence motivated

by gender exceeded Congress's authority  because activity proscribed was no jurisdictional

element required substantial effect on interstate commerce).

>        **II.      The Necessary and Proper Clause and the Optional Protocol does not
>                   authorize 2423(c).**

Section 2423(c) likewise cannot be upheld under the Necessary and Proper Clause as

within Congress's power to effectuate a treaty.  It is long settled that Congress has power

pursuant to the Necessary and Proper Clause of the Constitution to enact laws implementing

treaties to which the United States is a party, and the United States is a party to the Optional

Protocol to the United Nations Convention on the Rights of the Child on the Sale of Children,

Child Prostitution, and Child Pornography (Optional Protocol) S. Treaty Doc. No. 106-37, 2171

U.N.T.S. 227.  However, § 2423(c) was not passed to implement the treaty.

Congress does not have inherent authority to invent new offenses under the Necessary

and Proper Clause that were not contemplated by a treaty.  Moreover, when the Necessary and

Proper Clause is invoked, United States statutes implementing treaties replicate the treaty

language of the offense definitions contained therein or just incorporate the treaty definitions by

reference to the treaty.  *See* Anthony J. Colangelo, *Constitutional Limits on Extraterritorial

Jurisdiction, Terrorism and Intersection of National and International Law*, 48 Harv. Int'l. L. J.

121, 187-201 (2007) (comparing U.S. laws with the treaties they implement). Indeed, to qualify

as implementing legislation, an offense definition must "track the language of the [applicable]

treaty in all material respects."  *United States v. Belfast*, 611 F.3d 783, 804-05 (11th Cir. 2010);

*United States v. Lue*, 134 F.3d 79, 84 (2d Cir. 1998).  Without this constraint, Congress could

always find a treaty that at some high level of generality relates to anything Congress chooses to

regulate, thereby vitiating the nature of Congress's power as limited and enumerated.  Section

2423(c) neither identifies nor tracks a treaty.  Section 2423(c) bears no resemblance to the

offense definitions in the Protocol and was not enacted to implement the Protocol.  As a result, §

2423(c) does not reflect a valid exercise of Congress's authority under the Necessary and Proper

Clause.

By way of comparison, Congress passed the U.S. Torture Act, codified at 18 U.S.C. §

2340, to implement the Convention Against Torture and Other Cruel, Inhuman or Degrading

Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85.  In *United States v. Belfast*, 611

F.3d 783, 804-05 (11th Cir. 2010), a defendant challenged the Torture Act's offense definition of

torture as unconstitutionally broader than the Convention's definition.  The Eleventh Circuit

upheld the Act under the Necessary and Proper Clause because the Torture Act "tracks the

language of the treaty in all material respects."  *Id*.; s*ee also United States v. Lue*, 134 F.3d 79,

84 (2d Cir. 1998) (U.S. Hostage Taking Act was necessary and proper to implement the

Convention Against the Taking of Hostages where side by side comparison demonstrates that

they are nearly identical.)  In contrast, § 2423(c) does not track language in the Protocol and in

fact proscribes conduct that does not appear anywhere in the Protocol.  The Protocol, by its title,

seeks to regulate "The Sale of Children, Child Prostitution and Child Pornography."  S. Treaty

Doc. No. 106-37, 2171 U.N.T.S. 227.  The Treaty repeats this language and explicitly stresses

the need to protect children from "economic exploitation" and to reduce "consumer demand for

the sale of children, child prostitution and child pornography."  *Id*.

It is clear the Protocol was concerned with the *commercial* sexual exploitation of

children.  Each Article of the Protocol proscribes *commercial* acts.  State parties to the protocol

are directed to criminalize acts and activities involving the *sale* of children, child *prostitution* and

*commercial* child pornography.  There is nothing whatsoever in the Protocol about

noncommercial sexual activity with a minor.  Far from "tracking the language of the Convention in all material respects," § 2423(c) prohibits noncommercial activity, an entirely different offense.  Thus, the Necessary and Proper Clause is inapplicable and does not provide a constitutional basis for criminalizing the non-commercial exploitation of children by a United States citizen living outside of the United States.

### III.     Punishing Mr. Park's alleged conduct violates his due process rights because it is unfair and arbitrary.

The Due Process Clause limits the extraterritorial exercise of criminal jurisdiction.  *See United States v. Brehm*, 691 F.3d 547, 552-54 (4th Cir. 2012); *United States v. Ibarguen-Mosquera*, 634 F.3d 1370, 1378-79 (11th Cir. 2011); *United States v. Davis*, 905 F.2d 245, 248-49 (9th Cir. 1990); s*ee also United States v. Ballestas*, 795 F.3d. 138, 148 (D.C. Cir. 2015) (Court assumed, but did not decide, due process places limits on extraterritorial exercise of federal criminal jurisdiction).  Due process requires a "sufficient nexus between the defendant and the United States so that . . . application [of the law] would not be arbitrary or fundamentally unfair." *Davis*, 905 F.2d at 248-49.  A court must look to whether "application of the statute to the defendant [would] be arbitrary or fundamentally unfair." *Ballestas,* 795 F.3d at 148 (citation omitted).  Moreover, a United States court may "assert jurisdiction only over a defendant who 'should reasonably anticipate being haled into court' in this country." *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1257 (9th Cir. 1998) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)); *see also United States v. Ali*, 718 F.3d 929, 943 (D.C. Cir. 2013) ("The animating principle governing the due process limits of extraterritorial jurisdiction is the idea that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." (internal quotations and citations omitted)).

Due process requirements are only satisfied if there is an international treaty that provides "global notice" that the foreign conduct is "subject to prosecution" around the world, *Ali*, 718 F.3d at 94, or when there is a sufficient nexus between the foreign conduct and the United States. *Ballestas*, 795 F.3d at 148.  Neither is present here.  The Optional Protocol gave no notice that non-commercial activity would be "subject to prosecution," and there is no nexus between Mr. Park's alleged conduct and the United States.  Thus, neither international law nor the factual circumstances of Mr. Park's conduct provided fair notice to Mr. Park that he could be prosecuted in the United States.  Thus, this prosecution is beyond the authority of this Court and violates the Due Process Clause, so the indictment must be dismissed.

## IV.    The application of Section 2423(c) to Mr. Park is an Ex Post Facto application of the law.

The United States Constitution prohibits Congress from enacting any "ex post facto Law."  U.S. Const., art. I, § 9.  An ex post facto law is one which "makes an action, done before passing of the law, and which was innocent when done, criminal." *Calder v. Bull*, 3 U.S. 386, 390 (1798).  The amendment to § 2423(c) which purports to grant jurisdiction over Mr. Park was enacted in 2013.  Mr. Park had moved out of the United States by 2003 and had begun to reside in a foreign country at that time – more than a decade prior to the amendment of the statute.  Thus, applying the 2013 amendment to Mr. Park's conduct violates the *Ex Post Facto* Clause.

## V.    The Indictment should be dismissed because Mr. Park was illegally arrested.

The defense recognizes that the Supreme Court has held that the abduction of a defendant from a foreign country, in and of itself, does not divest the courts of jurisdiction to try the defendant.  *See Frisbie v. Collins*, 342 U.S. 519, 522 (1952) ("The power of a court to try a

person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction.'" (quoting *Ker v. Illinois*, 119 U.S. 436 (1886))). Known as the *Ker-Frisbie* doctrine, these cases have been extended to include situations in which government agents have been involved in the abduction of criminal defendants.  *See United States v. Alvarez-Machain*, 504 U.S. 655 (1992) (finding no violation of extradition treaty when DEA agents offered a reward for and paid for abduction of defendant).  However, the Supreme Court has long-recognized that an abuse of executive power can be so outrageous, and so egregious, that it "shocks the conscience," and thus constitutes a violation of substantive due process so grave that it divests the court of jurisdiction.  *Rochin v. California*, 342 U.S. 165, 172 (1952).  This occurs when conduct is "so 'brutal' and 'offensive' that it [does] not comport with traditional ideas of fair play and decency."  *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957); *see also United States v. Rezaq*, 134 F.3d 1121, 1130 (D.C. Cir. 1988) (exceptions to *Ker-Frisbie* exist when extradition treaty has been violated or outrageous conduct occurs).  Recognizing the high burden for him to prove outrageous government conduct, Mr. Park asserts as much here to preserve this issue for further review.

## Conclusion

There can be no doubt that Congress cannot regulate a person's noneconomic activities far removed from interstate commerce simply because a person had once before crossed states lines.  That is what Congress attempts to do in § 2434(c).  To uphold the statute under any rationale would give Congress plenary police power over the vast majority of United States citizens no matter where they reside.  There would be no limit on congressional regulatory authority over and United States citizen or permanent resident who has ever travelled in foreign commerce and indeed some who have *never* travelled in foreign commerce.

Nothing in the Constitution gives Congress the broad authority to criminalize behavior prohibited in the amended version of 18 U.S.C. §§ 2423(c) either facially or as applied in this case.  Neither the Necessary and Proper Clause nor the Foreign Commerce Clause expand Congress's limited and enumerated powers to criminalize the conduct proscribed in § 2423(c).  *See Al-Maliki*, 787 F.3d at 791-92 (addressing §§ 2423(c) and (f)(1)'s constitutionality for the first time on appeal under plain-error review and positing "Does [the Foreign Commerce Clause power] include the power to punish a citizen's noncommercial conduct while the citizen resides in a foreign nation?  We doubt it, but because of plain-error review, we need not finally decide today.")

Additionally, Mr. Park's due process rights have been violated because he could not reasonably have foreseen that his actions would have him brought before a court in the United States, and this Court's exercise of jurisdiction over him is in violation of the Ex Post Facto Clause.

For the reasons above, the indictment must be dismissed.

> Respectfully Submitted,
>
> A.J. KRAMER
> FEDERAL PUBLIC DEFENDER
>
> _____"/s/"_____
> MICHELLE PETERSON
> Assistant Federal Public Defender
> 625 Indiana Ave., NW   Ste. 550
> Washington, DC   20004
> (202) 208-7500
> shelli_peterson@fd.org