UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIM. NO. 16-0009 (TSC) |
| v. | : | |
| | : | |
| JOSEPH RICKY PARK, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

_____

**REPLY IN SUPPORT OF THE MOTION TO SUPPRESS
PHYSICAL EVIDENCE AND STATEMENTS**

Only after the defendant filed his Motion to Suppress did the government provide the

audio of the "statement" he made in Bangkok. Prior to that production, all that had been

produced was an agent's Report of Investigation (ROI) which implied that Mr. Park had, when

asked if he wanted to speak with the agents, inquired whether it was about boys in Vietnam. The

clear implication being that he knew why they wanted to speak with him before they told him.

Even the government's opposition mischaracterizes what occurred, attributing to the agent only a

general question about whether Mr. Park was willing to speak to agents. The audio makes clear

that it was the *agents* who told Mr. Park what they were there to talk about, and he clearly

indicated he wished to have counsel before he made any statements.[1]  The government is correct

that because this was a clear invocation of his right to counsel, the interrogation ceased at that

---

[1] After introducing himself and the other agents, Special Agent Goldman advised Mr. Park that
he wanted to ask Mr. Park about his "contacts with some boys on…mainly that occurred before
you came over here to Thailand - Vietnam. So that's why we're here." He then told Mr. Park
"we want to talk to you about those things so, before we can do that, because you're locked up
here, we need to advise you of your rights.  So before we ask you any questions it is my duty to
advise you of your rights.  Goldman then advised Mr. Park of his rights and asked him "do you
agree to speak with us right now?"  Mr. Park responded, "well, you said about boys in
Vietnam?" and "No. I think I want to, you know, consult with an attorney."

1

time.  However, the agents approached Mr. Park again in Guam 10 days later in violation of his right to counsel.  He had already clearly and unequivocally invoked his right to counsel.  The government was not free to interrogate him further or to ask him again to waive his rights.  *See Edwards v. Arizona*, 451 U.S. 477 (1980).  Thus, all statements made after the invocation of his right to counsel in Bangkok must be suppressed, including any statements made in Guam.  (See Gov't. Op. at 12-13).

The emails produced after Mr. Park's motion to suppress was filed demonstrate that United States government officials coordinated with law enforcement agents and private citizens in other countries to coerce Mr. Park into Guam where they could officially arrest him.  These actions constituted an illegal arrest.  The seizure of evidence obtained illegally from his apartment was unreasonable.  The evidence seized from his person was fruit of his illegal arrest.  Thus, all evidence must be seized.  The level of coordination rendering the arrest and search illegal will be demonstrated at a hearing on this motion.  Far from holding its investigation in abeyance while the government of Vietnam concluded its investigation, (see Gov't. Op. at 4), the emails exchanged between agents demonstrate a concerted effort to have Mr. Park investigated and returned to the United States.   Further, the evidence to be adduced at the hearing on this motion will demonstrate a great deal of coordination between U.S. agents and the Royal Thai Police.  As a direct result of the actions of United States agents, Mr. Park was arrested in Bangkok.  The U.S. agents even went so far as to ask the foreign agents to search the items that had been seized by the Royal Thai officers.  Then, upon his arrival in the Philippines and prior to the issuance of an arrest warrant in the United States, U.S. agents coordinated his expulsion in part by sharing information with the Bureau of Immigration about Mr. Park.  The government indicates that this information sharing was authorized by Operation Angel Watch, but it would

appear that Operation Angel Watch only authorizes the sharing of information about persons

who are sex offenders required to register, which Mr. Park was not.   The government had no

arrest warrant at the time and yet manipulated Mr. Park's expulsion from the Philippines.  Any

suggestion that Mr. Park "voluntarily boarded the plane" (Gov't. Op. at 12) in the Philippines is

disingenuous and will be demonstrated inaccurate at the hearing.  Because Mr. Park was arrested

prior to the issuance of an arrest warrant, his arrest was illegal.

Mr. Dutcher did not have authority to authorize a seizure of Mr. Park's belongings and

the officers could not have reasonably believed that he did.  While the government asserts that at

a hearing they will establish that the agents did not search Mr. Park's home, there is no dispute

that they did seize Mr. Park's property from Mr. Dutcher, believing that it was Mr. Park's

property, not Mr. Dutcher's property.[2]  *Cf. United States v. Peyton*, 745 F.3d 546, 552-54 (D.C.

Cir. 2014) (search and admission of evidence improper when officers lacked reasonable belief

that defendant's great grandmother, despite having authority over general common area, had

common authority over shoebox located where officers knew defendant specifically stored

personal belongings.)  Even if Mr. Dutcher had authority to use Mr. Park's books, there is no

evidence whatsoever that he was authorized to search or allow to be seized flash drives or a USB

hub.  The seizure of all computers and other media exceeded any reasonable seizure.  Any

suggestion that the government seizure was based upon the exigency that the evidence could be

altered or destroyed, (Gov't. Op. at 16), is unreasonable when the evidence was not under the

control of the defendant.   Moreover, evidence produced in discovery indicates that the items

seized were searched prior to the issuance of the search warrant.

For all of these reasons, as well as the evidence to be adduced at the hearing on this

---

[2] In addition to being seized without a warrant and without the consent of one authorized to grant such consent, it appears the seizure of the property violated the provisions of the Foreign Affairs Manual.

motion, the evidence and statements should be suppressed.


                                  Respectfully submitted,
                                  A.J. KRAMER
                                  FEDERAL PUBLIC DEFENDER

                                  ____"/s/"_____
                                  MICHELLE PETERSON
                                  Assistant Federal Public Defender
                                  625 Indiana Ave., NW   Ste. 550
                                  Washington, DC  20004
                                  (202) 208-7500
                                  shelli_peterson@fd.org