**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 16-cr-0009 (TSC) |
| | ) | |
| JOSEPH RICKY PARK, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Defendant Joseph Ricky Park is charged in a one-count indictment with engaging and attempting to engage in illicit sexual conduct in Vietnam in violation of 18 U.S.C. §§ 2423(c) and (e). ECF No. 2 (Indictment). Park moves to dismiss the indictment, arguing that 18 U.S.C. § 2423(c) is facially unconstitutional and unconstitutional as applied to him. Specifically, he argues that: (1) Congress did not have constitutional authority to enact section 2423(c); (2) the statute violates his due process rights; and (3) the statute violates the Constitution's *Ex Post Facto* Clause.

The court finds the alleged conduct in this case, if true, to be reprehensible. Every effort must be made to prosecute and eradicate the exploitation of children, wherever it takes place. Nevertheless, the statute under which a defendant is charged must be appropriate to the conduct alleged. Upon consideration of the parties' pleadings and the relevant law, the court finds that the application of 18 U.S.C. § 2423(c) to Park's alleged conduct is unconstitutional, and therefore Park's motion to dismiss will be GRANTED.

## I.  BACKGROUND

### A.  Factual Background

Despite being a United States citizen, Park has not resided in nor traveled to the United States in over fourteen years.  ECF No. 18 (Mot.) at 1.  He left the U.S. in 2003, and spent time in several countries, including Cuba, South Korea, the Philippines, Thailand, Russia, Kuwait, China, Laos, Singapore, Malaysia, Saudi Arabia, Bahrain, Lebanon, and Cambodia.  ECF No. 23 (Opp.) at 2.  From 2012 until October 2015, Park resided in Vietnam, where the conduct with which he is charged occurred.  Mot. at 1; Opp. at 3.

According to the government, around January 2015, Park invited three Vietnamese minor boys to his apartment, ostensibly for English language instruction.  Opp. at 2.  While the boys were playing video games, Park allegedly placed his hand on one of the minor's genitals, and proceeded to "'pinch' and stroke" the minor's genitals through his clothing.  *Id.* at 2–3.  Park then allegedly attempted to place his hand inside the minor's pants, but the minor pushed Park's hand away.  *Id.* at 3.

In October 2015, Vietnamese authorities asked Park to leave the country, on the grounds that he was teaching English while on a tourist visa.  *Id.*  Park agreed to leave and went to Thailand, where he was initially detained by authorities.  Opp. at 3; ECF No. 21 (Gov't Mot. to Suppress Resp.) at 6.  Around the time he left for Thailand, Park instructed a friend to go to his apartment in Vietnam and remove approximately 1,000 U.S. Dollars and an unspecified amount of Vietnamese Dong.  Opp. at 3.  He also directed his friend to purchase a plane ticket to Thailand, and to bring him his laptop, bank card, bank documents, vitamins, and any leftover money.  *Id.*  A few weeks later, he told his friend to retrieve any remaining items—including various computer devices—left in the apartment in Vietnam and store them in his friend's house.

*Id.*  A search of the computer devices, which were retrieved pursuant to a search warrant, revealed evidence of unidentified victims used in the production of child pornography from July 2013 through August 2015.  *Id.*

On January 13, 2016, Park was indicted on charges of engaging and attempting to engage in illicit sexual conduct with a minor in Vietnam in violation of 18 U.S.C. §§ 2423(c) and (e).  Park is also charged with the actual and attempted production of the recovered child pornography.[1]

### B.  Statutory Framework

In 2003, Congress enacted the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act ("PROTECT Act").  Pub. L. 108-21, 117 Stat. 650 (2003).  Section 2423(c) prohibited "travel[ing] in foreign commerce, and engag[ing] in any illicit sexual conduct."  117 Stat. at 654.  On March 7, 2013, Congress amended section 2423(c) to reach U.S. citizens who temporarily or permanently reside abroad:

> Any United States citizen or alien admitted for permanent residence who travels in foreign commerce or resides, either temporarily or permanently, in a foreign country, and engages in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

18 U.S.C. § 2423(c); Pub. L. 113-4, 127 Stat. 142 (2013).  Section 2423(e), as applied in this case, prohibits attempting to engage in illicit sexual conduct while residing in a foreign country.  *See* 18 U.S.C. § 2423(e).

Originally, section 2423(f) included two definitions of "illicit sexual conduct": (a) "a sexual act . . . with a person under 18 years of age that would be in violation of chapter

---

[1] The charges in this case relating to the alleged actual and attempted production of child pornography are based only on images produced after May 30, 2015, when section 2423's definition of "illicit sexual conduct" was amended to include the production of child pornography.  Opp. at 3 n.1.

109A if the sexual act occurred in the special maritime and territorial jurisdiction of the United States," and (b) "any commercial sex act . . . with a person under 18 years of age. Pub. L. 108-21, 117 Stat. 654. In May 2015, as part of the Justice for Victims of Trafficking Act of 2015, Congress further amended section 2423 by amending the definition of "illicit sexual conduct" in section 2423(f) to include "production of child pornography (as defined in section 2256(8))." Pub. L. 114-22, 129 Stat. 240 (2015).

## II.    LEGAL STANDARD

A defendant may challenge "a defect in the indictment or information"—including its constitutionality—as long as "the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(B). In making such a challenge, a defendant may challenge a statute as unconstitutional on its face or as applied to the conduct alleged. *See Hodge v. Talkin,* 799 F.3d 1145, 1156–57 (D.C. Cir. 2015). In order to show that a statute is facially unconstitutional, a defendant must demonstrate that the statute is "unconstitutional in all of its applications." *John Doe Co. v. Consumer Fin. Prot. Bureau*, 849 F.3d 1129, 1133 (D.C. Cir. 2017) (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)). In contrast, an as-applied challenge need only show that the statute is "an unconstitutional exercise of congressional power" as applied to the defendant's alleged conduct. *United States v. Sullivan*, 451 F.3d 884, 887 (D.C. Cir. 2006). When ruling on a motion to dismiss an indictment, the district court assumes the truth of the factual allegations in the indictment and the government's proffered facts. *United States v. Ballestas*, 795 F.3d 138, 149 (D.C. Cir. 2015).

## III.    DISCUSSION

Park moves to dismiss the indictment on the grounds that: (1) Congress lacked constitutional authority to enact 18 U.S.C. § 2423(c); (2) section 2423(c) violates his rights under the Due Process Clause of the Constitution because it is unfair and arbitrary; and (3) section 2423(c) violates his rights under the *Ex Post Facto* Clause of the Constitution because it retroactively criminalizes his residency abroad.[2]

### A.  Congress's Authority to Enact Section 2423(c)

Section 2423(c), originally and as amended, is presumed constitutional.  *Nat'l Mining Ass'n v. Kempthorne,* 512 F.3d 702, 711 (D.C. Cir. 2008) ("[T]he judiciary must rightly presume that Congress acts consistent with its duty to uphold the Constitution."); *see also United States v. Knowles*, 197 F. Supp. 3d 143, 152 (D.D.C. 2016) ("The Court must presume that a federal statute is constitutional.").  Notwithstanding this presumption, Congress's power to enact any law, including section 2423(c), must derive from the Constitution.  *United States v. Morrison*, 529 U.S. 598, 607 (2000) ("Every law enacted by Congress must be based on one or more of its powers enumerated in the Constitution."); *see also United States v. Carvajal*, 924 F. Supp. 2d 219, 249 (D.D.C. 2013) ("Because the powers of the legislature are defined and limited, every law enacted by Congress must be based on one or more of its powers enumerated in the Constitution.") (citation and internal quotation marks omitted).  As set forth below, the court finds that, as applied to the facts of this case, Congress did not have constitutional authority to enact section 2423(c).

---

[2] Park also argues that the indictment should be dismissed because he was illegally arrested. Mot. at 21–22.  He provides little support for this argument, and "[r]ecognizing the high burden" for proving "outrageous government conduct," explains that he makes this argument only to preserve the issue "for further review."  *Id.* at 22.

### i. Foreign Commerce Clause

The Commerce Clause authorizes Congress to "regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3. While the Supreme Court has not analyzed the Foreign Commerce Clause in much depth, *Knowles*, 197 F. Supp. 3d at 154 ("the Supreme Court has never clearly delineated the difference between the foreign commerce clause and the interstate commerce clause"), the "Foreign Commerce Clause is at least as broad as the more familiar Interstate Commerce Clause." *United States v. Homaune*, 898 F. Supp. 2d 153, 159 (D.D.C. 2012) (citing *Japan Line, Ltd. v. Cnty. of Los Angeles,* 441 U.S. 434, 448 (1979)).

Accordingly, courts in this Circuit have utilized the well-defined Interstate Commerce Clause framework—established in *United States v. Lopez*, 514 U.S. 549 (1995)—to analyze the constitutionality of laws enacted under the Foreign Commerce Clause. *See e.g.*, *United States v. Reed*, 2017 WL 3208458, at *6–8 (D.D.C. July 27, 2017); *Homaune*, 898 F. Supp. 2d at 159–160.[3] Courts in other jurisdictions have applied modified versions of the *Lopez* framework, and the government argues that the court should do so here. *See, e.g., United States v. Bollinger*, 798 F.3d 201, 215–16, 218–19 (4th Cir. 2015) (analyzing whether the activity regulated has a "demonstrable" as opposed to a "substantial" effect on foreign commerce); *United States v. Clark*, 435 F.3d 1100, 1114 (9th Cir. 2006) (finding that pre-amendment section 2423(c) "implicates foreign commerce to a constitutionally adequate degree"). Given the historical use of the *Lopez* framework in this jurisdiction, and absent clear direction from the Supreme Court or the D.C. Circuit, this court will apply the *Lopez* framework.

---

[3] Courts in other Circuits have similarly relied on the Interstate Commerce Clause framework to analyze section 2423(c)'s constitutionality. *See, e.g.*, *United States v. Pendleton*, 658 F.3d 299, 308–11 (3d Cir. 2011); *United States v. Martinez*, 599 F. Supp. 2d 784, 806 (W.D. Tex. 2009).

In *Lopez*, the Supreme Court held that Congress, in exercising its power to regulate interstate commerce, may regulate three broad categories of activity: (1) "the use of the channels of interstate commerce;" (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce;" and (3) "activities having a substantial relation to interstate commerce . . . i.e., activities that substantially affect interstate commerce." *Lopez*, 514 U.S. at 558–59 (citations omitted). The government argues that section 2423(c), as amended and charged in this case, satisfies all three *Lopez* prongs. Opp. at 14–17; ECF No. 29 (Gov't Resp. to Supp. Auth.) at 4–14. The court disagrees.

### 1. Channels of Foreign Commerce

As to the first prong, the government argues that section 2423(c) is a "valid method of protecting the channels of [foreign] commerce from immoral and injurious uses." Gov't Resp. to Supp. Auth. at 12 (citations and internal quotation marks omitted). However, the cases on which the government relies for this argument make clear that a statute protects the "channels of commerce" if it contains a jurisdictional element that provides an "express connection" to the channels of foreign commerce.

For instance, in *United States v. Pendleton*, the court analyzed whether the original version of section 2423(c), which criminalized "travel[ing] in foreign commerce, and engag[ing] in . . . illicit sexual conduct," was a valid exercise of Congress's power under the Foreign Commerce Clause. 658 F.3d at 301. The court found that because the statute criminalized the defendant's *travel* in foreign commerce, the statute had an "express connection" to the channels of foreign commerce, and therefore section 2423(c) was a valid exercise of Congress's power under the Foreign Commerce Clause. *Id.* at 311.

In *United States v. Homaune*, the defendant was charged with violating the International Parental Kidnapping Crime Act, codified at 18 U.S.C. § 1204.  898 F. Supp. 2d at 158.  In deciding whether the statute was a valid exercise of Congress's power under the Foreign Commerce Clause, the court found that because the statute criminalized "retain[ing] a child (*who has been in the United States*) outside the United States," the statute had a "jurisdictional hook" connecting it to foreign commerce.  *Id.* at 159 (emphasis in original).  The statute, the court found, "implicitly and unavoidably requires movement in foreign commerce."  *Id.* at 160 (citation and quotation marks omitted).

Here, section 2423(c), in criminalizing Park's *residing in* Vietnam, contains no "express connection" to foreign commerce.  Unlike in *Pendleton*, the statute, as applied in this case, does not criminalize Park's *travel to* Vietnam.  658 F.3d at 301.  Moreover, unlike in *Homaune*, section 2423(c), as applied in this case, does not "implicitly and unavoidably" require movement.  898 F. Supp. 2d at 160.  As applied to Park's conduct, the statute does not require him to have had any connection with or movement in foreign commerce at all.  Accordingly, section 2423(c) cannot be upheld under the first *Lopez* prong.

## 2. Instrumentalities of Foreign Commerce

With respect to the second prong, "Congress regulates the 'instrumentalities' of commerce when it passes legislation that directs or inhibits the vehicles of economic activity— e.g., airplanes, steamships, automobiles, trains—or interstate means of communication—e.g., mail and wires."  *Reed*, 2017 WL 3208458, at *8 (citing *Hous. E. & W. Tex. Ry. v. United States*, 234 U.S. 342, 353–54 (1914); *Ickes v. FAA*, 299 F.3d 260, 263 (3d Cir. 2002) (per curiam)).  The government argues that Park's U.S. passports and temporary visas are "instrumentalities" of commerce and that he utilized "interstate means of communication" to obtain these documents.

Gov't Resp. to Supp. Auth. at 11. In this case, however, section 2423(c) regulates residing in a foreign country and engaging in illicit sexual conduct. The statute does not regulate or prohibit Park's use of passports or temporary visas to travel to Vietnam. Nor does the statute regulate or prohibit Park's use of the internet or other means of communication to obtain these documents. Indeed, section 2423(c) does not reference passports, visas, or any other means of travel or communication at all. Therefore, even assuming *arguendo* that Park's passports and visas constituted "instrumentalities" of foreign commerce and that he utilized international "means of communication," section 2423(c), absent any regulation of passports, visas, or any other means of travel or communication, does not "direct or inhibit" these "instrumentalities" or "communications," and therefore does not satisfy *Lopez*'s second prong.

### 3. Substantial Effect on Foreign Commerce

Under *Lopez*'s third, "substantial effect" prong, the court considers four factors: (1) "whether the regulated activity has anything to do with commerce or any sort of economic enterprise, however broadly one might define those terms;" (2) "whether the statute in question contains an express jurisdictional element;" (3) "whether there are express congressional findings or legislative history regarding the effects upon interstate commerce of the regulated activity;" and (4) "whether the relationship between the regulated activity and interstate commerce is too attenuated to be regarded as substantial." *Rancho Viejo, LLC v. Norton*, 323 F.3d 1062, 1068–69 (D.C. Cir. 2003) (citing *Lopez*, 514 U.S. at 561–67) (internal quotation marks omitted). None of these factors, as applied to the facts of this case, support a finding that Congress was authorized to enact section 2423(c) to encompass the conduct charged here.

As to the first factor, the government acknowledges that the alleged conduct did not "involve[] a commercial transaction." ECF No. 22 (Gov't Bill of Particulars Resp.) at 2.

Nonetheless, relying on *United States v. Sullivan*, 451 F.3d 884, 890 (D.C. Cir. 2006), the government argues that child pornography—including non-commercial child pornography—is "quintessentially economic activity." Gov't Resp. to Supp. Auth. at 7. The government's reliance on *Sullivan* is misplaced, however, because in that case the Court, in assessing the criminalization of pornography that "had traversed interstate over the Internet," found that "the *trade* in child pornography is 'quintessentially economic.'" 451 F.3d at 885, 890 (emphasis added) (citation omitted). Here, the alleged pornography production occurred exclusively in Vietnam, and there is no indication that Park engaged in the *trade* of child pornography or that the pornography "traversed . . . over the Internet." Nor has the government argued that Park produced the child pornography "using materials that have been mailed, or shipped or transported in . . . foreign commerce." *Sullivan*, 451 F.3d at 885 (citing 18 U.S.C. § 2252A). Therefore, while *Sullivan* indicates that there may be circumstances under which the non-commercial production of child pornography is economic in nature, the facts of this case do not support such a finding.

Similarly, section 2423(c), as applied in this case, does not contain an "express jurisdictional element" connecting the statute to foreign commerce. *See supra* Section III.A.i., at 7–8. Park is charged with engaging in illicit sexual conduct while residing in Vietnam. Unlike cases in which the defendant is charged with traveling in foreign commerce and committing an illicit sexual act, there is no jurisdictional hook that saves section 2423(c) under the Foreign Commerce Clause. *See Homaune*, 898 F. Supp. 2d at 159.

Regarding the third *Lopez* factor, the government has proffered no evidence—legislative or otherwise—demonstrating that non-commercial illicit sexual conduct committed by Americans residing abroad has an effect on foreign commerce, and the legislative history of

section 2423(c) is devoid of any reference to such conduct or its effect on foreign commerce. *See United States v. Al-Maliki*, 787 F.3d 784, 793 (6th Cir. 2015) ("Congress's failure to even try to show the aggregate effect of non-commercial sexual activity on foreign commerce highlights its lack of power [to pass section 2423(c)].").

As to the fourth *Lopez* factor, the relationship between non-commercial sexual activity occurring exclusively in Vietnam and foreign commerce is too attenuated to be regarded as substantial. The government argues that Congress had a rational basis to conclude that residing abroad and participating in illicit sexual conduct "is part of a 'class of activities' that have a substantial effect on foreign commerce." Opp. at 17. In so arguing, the government asks the court to find that failing to regulate non-commercial sexual activity *could* lead to a widespread belief that sex with minors is available for "free and with less risk," which *could* result in the lowering of the price for sexual activity in the commercial market, *possibly* resulting in an increase in demand for commercial sexual activity. *See* Gov't Resp. to Supp. Auth. at 5. This possible increase in demand, the government argues, *may then* impact the number of victims and commercial sex acts that occur across the world. *Id.* This tenuous link between non-commercial illicit sexual conduct and the market for commercial illicit sexual conduct is precisely the "remote chain of inferences" referenced by Justice Scalia in his concurrence in *Gonzales v. Raich,* 545 U.S. 1, 36 (2005), and is too speculative to be "substantial." *See Morrison*, 529 U.S. at 615–17 (rejecting the government's argument that gender-motivated violence affected commerce by deterring interstate travel, decreasing employment in interstate business, and reducing national productivity); *see also Lopez*, 514 U.S. at 563–67 (holding that Congress could not regulate the possession of a firearm in a local school zone on the theory that firearm

possession may result in violent crime, which could in turn "affect the functioning of the national economy" by increasing insurance costs and threatening the educational process).[4]

*United States v. Reed* is instructive. In *Reed*, the defendant was charged under section 2423(c) with residing in the Philippines and sexually molesting his four-year old daughter. 2017 WL 3208458, at *1. The court found that it could not conclude that section 2423(c), in criminalizing the defendant's "act of sexually abusing his own child, without any evidence of commercial motive, is 'an essential part' of Congress' broader efforts to stamp out American citizens' participation in the international market for child trafficking and sex tourism." *Id.* at *13. The court found that "[b]y definition, the marketplace Congress seeks to eliminate depends on commerce and travel." *Id.* The defendant in *Reed*, as charged in the indictment, was "neither a child sex tourist nor child trafficker." *Id.* Moreover, the illicit sexual conduct at issue—sex with his daughter—was not commercial or economic in nature. *Id.* Therefore, the *Reed* court concluded that convicting the defendant for residing in the Philippines and sexually abusing his daughter "brings Congress no closer to stamping out the marketplace at which Section 2423's prohibitions are directed." *Id.*

Similarly, convicting Park for engaging in non-commercial illicit sexual conduct with minors while he was living in Vietnam does not help in eradicating the marketplace for

---

[4] The government relies on *Raich* to argue that the link between non-commercial sexual activity and foreign commerce qualifies as "substantial." Opp. at 15–16; Gov't Resp. to Supp. Auth. at 5–10. However, in *Raich*, the Supreme Court found that prohibiting the intrastate possession or manufacture of marijuana—an "article of commerce"—"is a rational . . . means of regulating commerce in that product." 545 U.S. at 26. Here, the government contends that prohibiting intra-national *non-commercial* sexual conduct is a rational means of regulating *commercial* sexual conduct. Nothing in *Raich* requires this court to so hold, especially if the court would have to utilize "a remote chain of inferences" to do so. *Id.* at 36 (Scalia, J., concurring) (noting that in *Lopez* and *Morrison* the Court "rejected the argument that Congress may regulate *noneconomic* activity based solely on the effect that it may have on interstate commerce through a remote chain of inferences.") (emphasis in original).

international sex trafficking or sex tourism.  The government references Park's history of child

sex offenses in the countries in which he previously resided, but he is not charged in this case

with being a child sex tourist or trafficker, nor is he alleged to have provided or received

consideration for his alleged sexual acts.  Gov't Bill of Particulars Resp. at 2.   This court, like

the court in *Reed*, is "not free to sidestep" the Supreme Court's decisions in *Lopez* and *Morrison*

and find that failing to regulate non-commercial illicit sexual conduct—fundamentally divorced

from foreign commerce—undercuts the regulation of commercial illicit sexual conduct.  2017

WL 3208458, at *12; *see also Raich*, 545 U.S. at 36 (Scalia, J., concurring) (noting that the

Supreme Court "rejected the argument that Congress may regulate noneconomic activity based

solely on the effect that it may have on interstate commerce through a remote chain of

inferences.").

The government argues that *Reed* is distinguishable because the defendant there was

molesting his own daughter, and there was no alleged production of child pornography.  Gov't

Resp. to Supp. Auth. at 2.  But whether the non-commercial sexual conduct is committed against

one's daughter or a complete stranger, and whether it involves the touching of a minor or the

production of child pornography, Congress cannot regulate wholly intra-national non-

commercial illicit sexual conduct abroad, just as it cannot regulate such conduct when it is

wholly intrastate within the United States.[5]  *See United States v. Kebodeaux*, 570 U.S. 387, 411

---

[5] Relying on *Sullivan*, the government argues that the court can regulate the wholly intra-national production of child pornography.  Gov't Resp. to Supp. Auth. at 7–10.  However, as explained above, the *Sullivan* court's analysis is inapplicable to this case.  *See supra*, Section III.A.i., at 9–10.  As are the other cases upon which the government relies.  In those cases, as in *Sullivan*, the courts analyzed statutes with language that clearly connected the statutes to foreign commerce. *See, e.g.*, *United States v. Bowers*, 594 F.3d 522, 527 (6th Cir. 2010) (explaining that statutes at issue prohibited "the manufacture and possession of child pornography produced using materials that were *mailed, shipped, or transported in interstate or foreign commerce*.") (emphasis added).

(2013) (Thomas, J., dissenting) ("Congress may not regulate noneconomic activity, such as sex crimes, based on the effect it might have on interstate commerce."); *see also Morrison*, 529 U.S. at 618 ("The regulation and punishment of intrastate violence that is not directed at the instrumentalities, channels, or goods involved in interstate commerce has always been the province of the States.").

The government argues that section 2423(c) should be assessed under the "demonstrable effect" test established in *Bollinger*, 798 F.3d at 215–16, instead of the "substantial effect" test established in *Lopez.* Opp. at 17–19. But even were the court to apply the demonstrable effect test, for the reasons stated above, it would reach the same conclusion. As the court found in *Reed*, "[r]elaxing the required nexus between commerce and the activity to be regulated does not affect the court's analysis in this case because there simply is no nexus" between the alleged non-commercial illicit sexual conduct and the market for child trafficking and sex tourism. 2017 WL 3208458, at *13.

In sum, the court finds that section 2423(c), as amended and charged, exceeds the scope of Congress's authority under the Foreign Commerce Clause.

### ii.  Necessary and Proper Clause – Treaty Power

The Necessary and Proper Clause empowers Congress to "make all Laws which shall be necessary and proper for carrying into Execution" a constitutionally enumerated power. U.S. Const. art. I, § 8, cl. 18. The Supreme Court has held that laws passed by Congress must be "rationally related to the implementation of a constitutionally enumerated power"—here, the President's power to make and execute treaties. *United States v. Comstock*, 560 U.S. 126, 134 (2010) (citing *Sabri v. United States,* 541 U.S. 600, 605 (2004)). In analyzing the relationship between a statute and an enumerated power, the relevant inquiry is "whether the means chosen

[by Congress] are 'reasonably adapted' to the attainment of a legitimate end under . . . powers that the Constitution grants Congress the authority to implement." *Id.* (citation and internal quotation marks omitted). While Congress's power under the Necessary and Proper Clause is broad, *see Knowles*, 197 F. Supp. 3d at 160, it is not limitless. *Comstock*, 560 U.S. at 135 ("[A] federal statute, in addition to being authorized by Art. I, § 8, must also 'not [be] prohibited' by the Constitution.") (quoting *M'Culloch v. State*, 17 U.S. 316, 421 (1819)).

The government argues that section 2423(c), originally and as amended, was enacted to implement the Optional Protocol to the Convention on the Rights of the Child on the Sale of Children, Child Prostitution, and Child Pornography, which was ratified on June 18, 2002. S. Treaty Doc. No. 106-37, 2000 WL 33366017 (July 5, 2000) (the "Optional Protocol"); 148 Cong. Rec. S5717-01. The Optional Protocol calls on States Parties to "prohibit the sale of children, child prostitution and child pornography." Optional Protocol art. 1. "Sale of children" is defined as "any act or transaction whereby a child is transferred by any person or group of persons to another for remuneration or any other consideration." *Id.* art. 2(a). "Child prostitution" is defined as "the use of a child in sexual activities for remuneration or any other form of consideration." *Id.* art. 2(b). And "child pornography" refers to "any representation, by whatever means, of a child engaged in real or simulated explicit sexual activities or any representation of the sexual parts of a child for primarily sexual purposes." *Id.* art. 2(c). The Optional Protocol requires each State Party to ensure that certain offenses relating to child exploitation, whether "committed domestically or transnationally," are fully covered under its criminal law. *Id.* art 3. If they are not, the Optional Protocol obligates States Parties to "adopt or strengthen, implement and disseminate" such laws. *See id.* art. 9(1).

As applied to the facts of this case, the court finds that the Necessary and Proper Clause does not authorize Congress's enactment of section 2423(c). As a threshold matter, the legislative history of section 2423(c) is devoid of any indication that Congress intended for section 2423(c), originally or as amended, to effectuate the Optional Protocol. Indeed, the government concedes that Congress did not reference the Optional Protocol when it enacted or amended the statute. Opp. at 24.

Moreover, even if Congress did intend to effectuate the Optional Protocol, section 2423(c), as amended and as applied to Park's non-commercial conduct, is not rationally related to the single goal of the Optional Protocol, which was to address the States Parties' grave concerns regarding the "*international traffic* of children." Optional Protocol at *7 (emphasis added). The Protocol was expressly aimed at upholding "the right of the child to be protected from *economic* exploitation." *Id.* at *6 (emphasis added). The States Parties believed that criminal laws were necessary to "reduce consumer demand" for the sale of children, child prostitution and child pornography. *Id.* at *7. The signatories were to ensure that their laws covered child exploitation offenses committed "domestically or *transnationally*." *Id.* art. 3(1) (emphasis added).

Section 2423(c)'s criminalization of non-commercial sexual abuse and the production of child pornography by an American residing in a foreign country is not "reasonably" or plainly adopted to implement the Protocol's goal. In this case, where there is no evidence that any remuneration or consideration was offered or exchanged, section 2423(c) does not serve to prevent the trafficking of children or alleviate their economic exploitation. Additionally, as explained above, the non-commercial conduct section 2423(c) seeks to criminalize in this case is wholly disconnected from any broader market. *See supra,* Section III.A.i, at 10–13. Moreover,

as applied to Park's conduct, the statute does not criminalize behavior that occurred domestically—within the United States—or transnationally—between two or more nations—as required under Article 3 of the Optional Protocol. Optional Protocol art. 3 ("Each State Party shall ensure that . . . the following acts and activities are fully covered under its criminal or penal law, whether these offences are committed domestically or transnationally."). Instead, it criminalizes activity that occurred only in Vietnam, and that could be handled entirely by Vietnamese law enforcement.[6] Prosecuting an American residing abroad who molests a child or produces child pornography for no commercial purpose brings the State Parties to the Optional Protocol no closer to eliminating the international market in child trafficking, and therefore the Optional Protocol does not demand or authorize Congress to enact a statute criminalizing such conduct. *Reed*, 2017 WL 3208458, at *18. Consequently, section 2423(c), as applied to Park's alleged conduct, does not bear a rational relationship to the Optional Protocol, and therefore cannot be upheld as a valid exercise of Congressional power under the Necessary and Proper Clause.

In support of its position, the government cites to several cases finding that section 2423(c) effectuates the Optional Protocol. Gov't Resp. to Supp. Auth. at 15. However, all of these cases involved individuals charged with traveling in foreign commerce and engaging in illicit sexual conduct. The "travels in foreign commerce" language of section 2423(c) arguably aligns with the Optional Protocol's transnational focus. *See* Optional Protocol art. 3. Here, there is no such transnational component, as the statute criminalizes conduct that occurred exclusively in Vietnam, long after Park had left the United States. Therefore, the cases on which the

---

[6] According to the government, Vietnamese officials investigated Park's alleged conduct between February and October of 2015. *See* Gov't Mot. to Suppress Resp. at 3–4.

government relies do not persuade the court that, as applied to the non-commercial conduct of an American who *resided* in a foreign country, section 2423(c) is rationally related to the Optional Protocol.

The court is also unpersuaded by the government's argument that the Optional Protocol was explicitly aimed at targeting *non-commercial* child pornography. First, the government has not identified any reference to the Optional Protocol in the legislative history of the May 2015 amendment adding "production of child pornography" to the definition of "illicit sexual conduct." And while the Optional Protocol does require States Parties to ensure that their laws criminalize the production of child pornography, this requirement applies to offenses committed domestically or transnationally. *See* Optional Protocol art. 3. In other words, the Optional Protocol requires the United States to ensure that its laws criminalize "producing, distributing, disseminating, importing, exporting, offering, selling or possessing . . . child pornography" *within* the United States or *between* the United States and another country. *Id.* art. 3(1)(c). It does not require the United States to criminalize the production of child pornography in *another* country, nor could it. *See Reed*, 2017 WL 3208458, at *17 ("Allowing [section 2423(c)] to stand as legislation that implements the Optional Protocol would transform the scope of the treaty to reach a matter of domestic concern—the purely local, non-commercial sexual abuse of a minor—which is a topic on which the President arguably lacks authority to negotiate.") (citing *Bond v. United States*, 134 S.Ct. 2077, 2109 (2014) (Thomas, J., concurring); *Power Auth. of N.Y. v. Fed. Power Comm.*, 247 F.2d 538, 542–43 (D.C. Cir. 1957)).

In sum, the court finds that section 2423(c), as amended and charged, exceeds the scope of Congress's authority to effectuate treaties under the Necessary and Proper Clause.

### iii. Congress's Plenary Powers

Lastly, the government argues that Congress's power to enact section 2423(c) is grounded in its plenary powers over citizens and foreign affairs, which arises separate and "apart from powers enumerated in the Constitution." Opp. at 25. Congress's "power to extend federal criminal laws to acts of United States citizens" in foreign countries, the government argues, should "direct the Court's assessment" of section 2423(c)'s constitutionality. *Id.* at 31. In light of this plenary power, the government contends, this court can find section 2423(c) constitutional based solely on the United States' power to apply its criminal laws extraterritorially. *Id.* at 25– 28. But it is well-settled that Congress's power to enact legislation must derive from the Constitution, *Morrison*, 529 U.S. at 607, and the government cites no authority holding otherwise. Indeed, some of the cases cited by the government in support of their argument involved the issue of whether Congress had the authority to enact statutes with extraterritorial effect (an authority Park does not dispute unless the statute violates due process). *United States v. Blackmer*, 284 U.S. 421, 437–38 (1932) (finding that Congress permissibly enacted the statute at issue to have an extraterritorial reach); *United States v. King*, 552 F.2d 833, 852 (9th Cir. 1976) (same); *United States v. Lansky*, 496 F.2d 1063, 1067 (5th Cir. 1974) (same). The other cases involved the extent of a constitutionally valid statute's extraterritorial reach. *United States v. Mitchell*, 553 F.2d 996, 997 (5th Cir. 1977) (finding that the criminal prohibitions of the Marine Mammal Protection Act do not reach conduct in other nations' territorial waters); *United States v. Gatlin*, 216 F.3d 207, 209 (2d Cir. 2000) (finding that the district court lacked jurisdiction because the offense took place in Germany); *United States v. Frank*, 599 F.3d 1221, 1233 (11th Cir. 2010) (finding that the statute at issue applied extraterritorially). None of these

cases stand for the proposition that a law can be deemed constitutionally valid based *solely* on Congress's power to apply its laws extraterritorially.

The government also fails to direct the court to any precedent recognizing Congress's "inherent power to legislate in external affairs and matters touching on foreign relations." Opp. at 28. Relying predominantly on *United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304 (1936), the government argues that Congress has plenary power not derived from the Constitution to legislate in external affairs. But in *Curtiss-Wright*, the Supreme Court found that the President—not Congress—had "plenary and exclusive power . . . as the sole organ of the federal government in the field of international relations." 299 U.S. at 320; *see also Zweibon v. Mitchell*, 516 F.2d 594, 621 (D.C. Cir. 1975) (recognizing that *Curtiss-Wright* "certainly supports the contention that the President's powers are not limited to those specifically enumerated in the Constitution."). The Court found that, given the President's exclusive power, it was not an unlawful delegation of Congress's legislative power to enact a law authorizing the President to take actions affecting foreign relations. The Court did not address whether Congress had plenary power over foreign affairs apart from those enumerated in the Constitution.

The government also cites to *United States v. Clark,* 435 F.3d 1100 (9th Cir. 2006), in which the Ninth Circuit noted in a footnote that "Congress's plenary authority over foreign affairs *may* also provide a sufficient basis" for section 2423(c), but ultimately upheld the statute's constitutionally under an enumerated power in the Constitution: the Foreign Commerce Clause. *Id.* at 1109 n.14, 1117 (emphasis added). Given the absence of case law supporting the government's position, the court declines to find that Congress has plenary powers over citizens and foreign affairs that empower it to act in the absence of constitutional authority.

**B. Park's Additional Arguments**

Having found that Congress was not authorized to enact section 2423(c)—insofar as it criminalizes Park's purported acts of residing in Vietnam and engaging in illicit sexual conduct—the court need not address Park's Due Process Clause and *Ex Post Facto* Clause arguments. The court also does not address Park's broader facial challenge to section 2423(c).

## IV.    CONCLUSION

The court is mindful of the repugnant acts charged in this case, and does not reach its decision lightly. But it cannot deem constitutional the application of section 2423(c) to Park's alleged conduct based solely on the nature of the offenses involved. Congress's authority to criminalize conduct must derive from the Constitution, and the court finds that it does not in this case. For the reasons set forth above, Park's motion to dismiss will be GRANTED.

Date:  February 28, 2018

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge